Dear Mayor Grace:
You requested the opinion of this office regarding a potential call of a special election by the Iberville Parish Police Jury (the "Police Jury") concerning the legality of the Police Jury holding an election to restructure the disposition of the proceeds of two sales taxes being levied by the Parish and shared by certain municipalities in the Parish. St. Gabriel is not included in the municipalities which share in the tax proceeds because it is newly incorporated. You advised that the propositions for the new elections would honor any obligations to outstanding bondholders.
The voters of the Parish approved a 1% sales and use tax at an election held on July 21, 1959 (the "1959 Tax"). The avails of the 1959 Tax were to be "allocated and divided between the Parish and the municipalities in the Parish in accordance with an ordinance adopted by the Police Jury of said Parish on January 8, 1959". The Parish was to use the proceeds for the purpose of constructing and maintaining public roads, highways and bridges within the unincorporated areas of the Parish and was to be used by the municipalities for certain enumerated capital improvement purposes. The sales tax was to be levied for a period not to exceed 25 years and was subject to being funded into bonds by the parish and the municipalities.
The ordinance of January 8, 1959 divides the avails of the tax, after collection expenses have been deducted, between the Police Jury (58.9621%), the Village of Grosse Tete (2.4792%), the Village of Maringouin (3.8019%), the Town of Plaquemine (24.9347%), the Village of Rosedale (2.0926%) and the Town of White Castle (7.7294%). The ordinance also provided that the allocation or division of the avails shall be binding upon all cities, towns and villages of the Parish affected thereby and upon all interested parties.
On November 4, 1980, the voters approved extending the 1% sales and use tax for a period of twenty-five years. The 1980 proposition stated that the proceeds of the tax would "continue to be allocated and divided between the Parish and Municipalities in the Parish in accordance with an ordinance adopted by the Police Jury of the Parish of Iberville on January 8, 1959, (which allocation was approved at the aforesaid election) . . .". The proposition further provided that the Parish could use the avails of the tax "for the purpose of constructing and maintaining public roads, highways, and bridges within the unincorporated areas of the Parish and for the Purpose of constructing a courthouse and other public buildings throughout the Parish . . ." The proposition also limited the debt service for any Parish bonds to a maximum of 40% of the Parish's allocation for the tax for that year.
In 1982, the Police Jury issued $6,500,000 of bonds payable from the 1959 Tax, as extended. The 1982 bonds were refunded and the final maturity of the refunding bonds is September 1, 2002.
On July 13, 1991, the voters of the Parish approved an additional 2/3% sales and use tax (the 1991 Tax"), the proceeds of which are to be allocated and divided between the Police Jury (62.0439%), the Village of Grosse Tete (1.7424%), the Village of Maringouin (3.7006%), the Town of Plaquemine (23.1441%), the Village of Rosedale (2.5991%), and the Town of White Castle (6.7699%). The proceeds of the 1991 Tax were "to be used by the Parish and municipalities in the Parish to pay the cost of capital outlay projects; maintaining and operating public facilities; administering local governments; and for any other lawful purpose . . ." The tax was subject to being funded into bonds by the Parish and municipalities to pay the cost of any capital improvements or projects.
The Police Jury adopted a resolution on May 7, 1991, dedicating one-third of the Parish's pro rata share of the 1991 Tax to fire protection, by dividing the dedicated moneys equally among ten fire departments located throughout the Parish.
We understand that while the Parish has not issued any bonds secured by the 1991 Tax, the Town of White Castle and the City of Plaquemine have issued bonds payable from the 1991 Tax.
We have found two cases which pertain to facts similar to those presented. In Town of Ball, et al. v. Rapides Parish PoliceJury, 746 F.2d 1049 (5th Cir. 1984), the town and several of its citizens filed suit against the parish alleging that the parish's distribution formula of sales tax proceeds violated the14th Amendment to the U.S. Constitution. The sales tax had been approved by the voters approximately five years prior to the incorporation of the Town of Ball. The tax distribution plan was not drafted to account for a newly-incorporated municipality and the Town of Ball received nothing for over a ten year period. The Town of Ball was the fastest growing municipality in the Parish, while five of the nine other municipalities in the Parish lost residents. The parish police jury proposed a revision to the distribution scheme which was rejected by the voters.
The court determined that the equal protection clause applied to the distribution plan of taxes of a local government. The court held, however, that there was a rational basis for denying the Town of Ball any share in the revenues since bonds had been issued by several of the participating governmental subdivisions payable from such tax revenues. The court found that a reallocation of the tax might result in the payment of the bonds being jeopardized. The court determined that there was a rational basis for the police jury's reasonable concern that changing the allocation system to accommodate the Town of Ball might imperil the security of funded, issued bonds, and thus there was no denial of the equal protection of the law.
In Town of Brusly v. West Baton Rouge Parish Police Jury(West Baton Rouge), 283 So.2d 288 (La.App. 1st Cir. 1973), writ refused, the Town sought to mandamus the Police Jury to reallocate a portion of the parish sales taxes derived as a result of an ordinance adopted by the police jury. The court determined that once the Police Jury adopted an ordinance setting the allocation of the proceeds of the tax prior to the election based upon a federal census "no reallocation after the election could ever be made" because it would be impossible for the police jury to publish the allocation prior to the election held for the purpose of imposing the tax. The court further held that once bonds have been issued payable from the tax, there can be no reallocation of tax revenues until all municipal bonds have been retired. The police jury had no authority, much less a mandatory duty, to reallocate the avails of the sales tax among the various municipalities of West Baton Rouge.
Based upon the foregoing, it is the opinion of this office that the Iberville Parish Police Jury cannot legally change the distribution of either of the sales taxes without an election. Furthermore, the Police Jury cannot be compelled to hold an election. Even if the Police Jury were to hold an election, the election could not authorize the change, reduction or reallocation of the tax as long as bonds secured by that portion of the tax are outstanding. La. R.S. 39:698.5. However, if the sales tax has not been pledged to the payment of bonds, the Police Jury, if so chose, could hold an election to have the voters approve a rededication and reallocation of the sales tax.
Trusting this adequately responds to your request, I remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
BY: _________________________________________
 MARTHA S. HESS Assistant Attorney General
RPI/MSH
Date Received:
Date Released:
Martha S. Hess Assistant Attorney General